No. 01-701

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 173

IN RE THE MARRIAGE OF

KELLY JOLENE BURK,

       Petitioner and Respondent,

  and

JACK LOUIS BURK,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                  In and for the County of Lincoln,
                  The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Amy Guth, Attorney at Law, Libby, Montana

       For Respondent:

              Peter F. Carroll, Attorney at Law, Kalispell, Montana

                        Submitted on Briefs:  March 14, 2002

                                 Decided:  August 6, 2002

Filed:

_____
                      Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Jack Louis Burk (Jack) appeals from the Findings of Fact, Conclusions of Law, and Order Granting Motion to Modify Parenting Plan entered by the Nineteenth Judicial District Court, Lincoln County, which, among other things, designated Kelly Jolene Burk (Kelly) as the residential parent of the parties' three children. We affirm.

¶2 The issues are whether the District Court made the necessary findings, whether the findings made are clearly erroneous and whether the court abused its discretion in modifying the parenting plan.

BACKGROUND

¶3 Jack and Kelly's marriage was dissolved in 1998, at which time both Jack and Kelly resided in Eureka, Montana. After a contested custody hearing, the District Court stated concerns with regard to both parents, but also found that "[d]espite his flaws, Jack puts his children first." It adopted a parenting plan awarding the parties joint custody of their three preteenage children, with Jack designated as the primary residential custodian, and Kelly having visitation rights.

¶4 The District Court amended the parenting plan at Jack's request in March of 2000, after Kelly relocated to the state of Washington. The amended parenting plan addressed visitation arrangements in view of the increased distance between the parents' homes.

¶5 In May of 2001, Kelly moved the District Court to modify the parenting plan again and to designate her as the children's residential parent. In support of her motion, she filed an affidavit stating that, for the preceding 20 months, the children had been living with Jack's parents in Eureka while Jack worked long hours out of town as a logger. She stated Jack returned to Eureka primarily on weekends, spending very little time with the children and leaving their care to his parents. She further averred that she had visited the children for 5 to 7 days every two months or so over the past two years, contacted them by telephone at least twice a week, and had them with her in Washington during the summer months. She alleged the children's home environment in Eureka was both verbally and physically abusive.

¶6 The District Court held a hearing on Kelly's motion to modify at which it heard testimony from Jack, Kelly and numerous other witnesses, and received a number of exhibits into evidence. Kelly presented evidence which supported the statements in her affidavit. Jack presented evidence that the children were content and well-cared-for in his parents' household. He also argued Kelly was not a suitable custodial parent because she smoked cigarettes, had corporally punished the children, and was cohabitating with a man with whom she had a new baby and whose two children from a previous marriage also would be included in their household.

¶7 In detailed findings and conclusions, the District Court determined Jack had basically turned the children over to his parents to raise and had not continued to "put the children first."

3

The court found that, even when Jack was in town and not working, such as during the six to eight weeks of "spring breakup" each year, the children continued to live with his parents. The court found Kelly had made significant strides to straighten out her life and had continued to demonstrate "a fairly remarkable devotion to the children under fairly difficult circumstances." Ultimately, the District Court found the children's best interests would be served by granting Kelly's motion to modify and designating her as the residential parent. Jack appeals.

DISCUSSION

¶8    Did the District Court make the necessary findings, are the findings made clearly erroneous and did the court abuse its discretion in modifying the parenting plan?

¶9    A district court may amend a parenting plan

> if it finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child.

Section 40-4-219(1), MCA. Jack contends the court failed to make a finding regarding a change in circumstances, the change in circumstances which existed was not based on "new" facts, and the court erred in finding the change was necessary to serve the best interests of the children.

¶10   Jack argues first that the District Court failed to make the finding regarding a change in the children's circumstances required by § 40-4-219(1), MCA. In its Findings of Fact, Conclusions of Law and Order, however, the District Court expressly found that its 1998 Parenting Plan placed the children's legal residence "with

4

Jack at his residence in/near Eureka, Montana." It further found that, soon after the Parenting Plan was entered, Jack moved the children into his parents' home. Finally, the District Court found that, at the time the original Parenting Plan was modified in 2000 at Jack's request, it was not aware that the children already had been moved into Jack's parents' home. In this latter regard, Jack concedes on appeal that he did not apprise the court of that fact during the modification proceeding in 2000.

¶11 The District Court's unchallenged findings state, as matters of fact, that Jack moved the children's residence after the original parenting plan and that it was not aware of that move at any time prior to Kelly's motion to modify in 2001. While lacking the statutory "change in circumstances" language, we conclude the District Court's findings clearly state the component parts of a change in circumstances finding--namely, facts arising after the 1998 plan and unknown to the court at the time of the amendment of the plan in 2000-- required by § 40-4-219(1), MCA. Moreover, Jack cites to no authority--and we know of none--rendering a court's failure to use the actual "change in circumstances" language of the statute reversible error. An express finding using the statutory language certainly is preferable. However, we have held that a court's failure to specifically use those words in findings which otherwise imply a finding of change in circumstances was, at most, harmless error. *See In re Custody of Arneson-Nelson*, 2001 MT 242, ¶ 30, 307 Mont. 60, ¶ 30, 36 P.3d 874, ¶ 30.

¶12 Jack also asserts that, because Kelly failed to challenge the arrangement--of which she was aware--during his modification proceeding in 2000, the District Court erred in considering the placement of the children with his parents as the basis for the change in circumstances. The District Court stated, however, that even if <u>Kelly</u> were aware of the arrangement between Jack and his parents at the time of the modification in 2000, <u>it</u> was not aware of the children's placement with Jack's parents at that time. As a result, the court properly ruled that the this modification pursuant to Kelly's motion was permissible under the portion of § 40-4-219(1), MCA, which allows modification on a finding of changed circumstances based on facts "unknown to the court at the time of entry of the prior plan."

¶13 Jack also relies on several of our cases for the proposition that a default judgment precludes relitigation of custody proceedings which do not meet the threshold change of circumstances requirement of § 40-4-219, MCA. His interpretation of the cases is correct, but the cases do not help him here.

¶14 By its terms, the change in circumstances requirement contained in § 40-4-219, MCA, applies to modifications of all parenting plans. Our cases merely recognize that, even if the original plan and decree were entered by default, a showing of substantial change in the child's circumstances is required to meet the statutory requirements for modification. *See In re Marriage of Hay* (1990), 241 Mont. 372, 376-77, 786 P.2d 1195, 1198; *In re Custody of Andre* (1988), 234 Mont. 80, 85, 761 P.2d 809, 812;

6

*Svennungsen v. Svennungsen* (1974), 165 Mont. 161, 166, 527 P.2d 640, 643. In other words, even where an original decree is uncontested, the defaulting parent must satisfy the requirements of § 40-4-219, MCA, for a modification. Thus, the issue is not whether the original or 2000 modification was contested. The issue is whether, in the present case, Kelly met the change of circumstances requirement. As discussed above, that requirement is met in this case.

¶15 Jack next makes a number of assertions relating to findings of fact made by the District Court. Specifically, Jack objects to the court's findings reprimanding him for hitting the children with a piece of kindling and for leaving the children in his parents' care.

¶16 Our standard of review of a district court's findings of fact is whether they are clearly erroneous. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court has misapprehended the effect of the evidence, or if this Court's review of the record convinces it that a mistake has been made. *In re Marriage of Johnson* (1994), 266 Mont. 158, 166-67, 879 P.2d 689, 694 (citations omitted). District court findings are presumed correct and the appellant has the burden of establishing error. *DeVoe v. State* (1997), 281 Mont. 356, 363, 935 P.2d 256, 260 (citation omitted). Jack does not argue a lack of substantial evidence to support the above findings and has not established that the findings are otherwise clearly erroneous.

7

¶17 Jack also contends the District Court erred by failing to make certain findings. He contends the court essentially condoned Kelly's admission that she had disciplined the children by hitting them with a belt and disregarded that she had established a new relationship with a man who had custody of his two children from a previous relationship and with whom she had a 19-month-old child, and that she planned to provide child care by hiring an unlicensed 23-year-old baby sitter with two small children of her own.

¶18 A court need not make findings on every piece of evidence, but only the essential and determining factors upon which its determination is based. *In re Marriage of Drake*, 2002 MT 127, ¶ 23, 310 Mont. 114, ¶ 23, 49 P.3d 38, ¶ 23 (citation omitted). The fact that the District Court made no findings on Kelly's discipline with a belt and her choice of babysitter is not dispositive. Moreover, the District Court addressed Kelly's relationship with her boyfriend, finding that "Kelly has a 19 month child with her boyfriend (whom she claims to be planning to marry), and she now has her boyfriend's two children to help raise." The court also stated it was impressed with Kelly's boyfriend's "devotion to Kelly and to her children." Thus, while the court found that some of Kelly's circumstances are "somewhat troubling, the Court has no doubt that Kelly is prepared to provide the parental love and attention that Jack has seemed so reluctant to provide."

¶19 Jack also contends the District Court did not consider his evidence about the good care provided the children by his parents, thereby abusing its discretion. The record reflects otherwise.

The court clearly considered Jack's evidence. It found that, "[e]ven if Jack's parents are providing a good home for the children, Kelly's rights cannot be subjugated to those of the grandparents." The court was correct. A modification of a parenting plan is based on the best interests of the children with regard to the respective parents. *See* § 40-4-219, MCA. In unchallenged findings, the District Court found that Jack has been an indifferent parent, is not adequately committed to his children and, basically, has abandoned the children. In light of these findings, Jack's contentions regarding the quality of care his parents provide are of little relevance.

¶20 Jack's final argument relates to whether the District Court demonstrated sufficient consideration of the best interest of the child factors set forth in §§ 40-4-212 and 40-4-219, MCA. In ruling on a motion to modify a parenting plan, the court may consider the factors set forth in § 40-4-219(1), MCA, in addition to considering "all relevant parenting factors" pursuant to § 40-4-212(1), MCA. The district court need not make a specific finding on each statutory factor, but must show that it considered each element by making specific findings regarding the best interests of the children. *In re Marriage of Arrotta* (1990), 244 Mont. 508, 513, 797 P.2d 940, 943 (citation omitted).

¶21 Jack is correct in pointing out that the District Court did not expressly address in its findings such statutory factors as the wishes of the children; the interaction and interrelationship of the children with their paternal grandparents and cousins; the

9

children's adjustment to home, school and community; or continuity of care. He is not correct that the court failed to <u>consider</u> those factors and his evidence relating thereto. Indeed, the District Court stated it had considered the "best interest" factors set forth at §§ 40-4-212 and 40-4-219, MCA.

¶22 Jack also contends the court did not address the physical health of the individuals involved and, specifically, the daughter's asthma in relation to her mother's and mother's boyfriend's smoking or whether one parent knowingly failed to financially support the children. However, the court found Kelly's testimony that she does not smoke in the house convincing. It further found that, while Kelly is not entirely current on her share of the children's medical and dental bills, that failure is largely attributable to factors other than a knowing or willful failure to pay.

¶23 The District Court also made findings in addition to those discussed previously. It found that "[t]he bottom line is that for the past 2½ years the children have been farmed out to their grandparents while Jack has shown a lack of commitment to the children. At the same time, Kelly has made significant strides in her own life and has consistently shown that she is devoted to her children." Furthermore, after considering the other statutory factors relating to the children's best interests, the court stated that "none of the factors identified in those statutes, alone or taken together, outweigh the fact in this case that Jack has basically abandoned his children, and Kelly stands willing and able

10

to provide a good home for the children."  Jack does not address these findings and we conclude they are supported by substantial evidence and are not otherwise clearly erroneous.

¶24  A trial court's modification of custody or a parenting plan will be reversed only upon a showing of clear abuse of discretion.  *See In re Marriage of Hunt* (1994), 264 Mont. 159, 164, 870 P.2d 720, 723.  An abuse of discretion occurs only when the court "acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice."  *In re Marriage of Meeks* (1996), 276 Mont. 237, 242, 915 P.2d 831, 834 (citation omitted).  Based on the record before us, it cannot be said that the court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice.  We hold, therefore, that the District Court did not abuse its discretion in modifying the parenting plan.

¶25  Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ JIM RICE

11