FILED

December 9 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0109

DA 14-0109

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 324

IN RE THE MARRIAGE OF:

LEWIS E. PESANTI,

      Petitioner and Appellant,

  and

TERRA L. PESANTI,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte/Silver Bow, Cause No. DR 11-209
Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Palmer A. Hoovestal, Hoovestal Law Firm, Helena, Montana

      For Appellee:

          Mark A. Vucurovich, Henningsen, Vucurovich & Richardson, P.C.,
Butte, Montana

Submitted on Briefs:  October 29, 2014
Decided:  December 9, 2014

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Lewis E. Pesanti appeals the Second Judicial District Court's final decree of dissolution of his marriage with Terra L. Pesanti and its entry of a final parenting plan for their minor children. We address the following issues:

> 1. *Whether the District Court abused its discretion by awarding primary custody of the children to Terra.*
>
> 2. *Whether the District Court abused its discretion with regard to Lewis's child support obligation.*

¶2    We affirm on the first issue and reverse and remand on the second.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    Lewis and Terra married in 1995. They had three children together. All of the children are minors and one suffers from a severe seizure syndrome. In 2011, Lewis filed with the District Court a petition for dissolution of the marriage.

¶4    In September 2011, Lewis began paying Terra approximately $500 a month for support of the children. Soon thereafter, Terra filed a motion for temporary child support with the Child Support Enforcement Division of the Montana Department of Public Health and Human Services (CSED). In February 2012, an administrative law judge (ALJ) with CSED entered a proposed temporary child support order. In the order, the ALJ made findings regarding the parties' incomes and properties and concluded that Lewis should pay Terra $1,644 in child support per month. The ALJ determined that Lewis's child support obligation was retroactive to September 2011. Thus, after deducting the $2,600 Lewis already had paid Terra over the course of five months, Lewis

was $7,264 in arrears. The proposed order notified the parties of their right to seek administrative review of the order and the process for doing so. Neither party sought administrative review. Accordingly, the proposed order was entered as a final temporary order after the window to seek further review had closed.

¶5 Lewis moved the District Court in April 2012 to modify the temporary child support order. Lewis notified CSED and Terra of the motion. Both CSED and Terra objected to it. Because the District Court failed to rule on the motion, the motion was deemed denied according to a Second Judicial District local rule.

¶6 In March 2013, the District Court held a bench trial on the dissolution of the Pesantis' marriage. In January 2014, the court entered its final parenting plan and final decree of dissolution. The orders specify that the children will reside primarily with Terra; Lewis is entitled to parenting time every other weekend, on Wednesday evenings, every other holiday, and for a continuous twenty-day period each summer. The orders direct that "[c]hild support shall be calculated according to the Montana Child Support Guidelines and shall be administered and enforced by [CSED]."[1] Lewis appeals the orders.

## STANDARDS OF REVIEW

¶7 We review factual findings in parenting plans and child support orders to determine if they are clearly erroneous. *In re Marriage of Tummarello*, 2012 MT 18,

---

[1] The parties appear to assume that this direction effectively adopts the ALJ's previous determination regarding Lewis's child support obligation. Although that is not facially obvious, this opinion proceeds under that understanding.

3

¶ 21, 363 Mont. 387, 270 P.3d 28. "A finding is clearly erroneous if it is not supported by substantial evidence, the district court misapprehended the effect of the evidence, or our review of the evidence convinces us that the district court made a mistake." *In re Marriage of Crilly*, 2005 MT 311, ¶ 10, 329 Mont. 479, 124 P.3d 1151. We review the trial court's orders in such matters for an abuse of discretion. *Tummarello*, ¶ 21. We will not find an abuse of discretion unless the court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason, resulting in substantial injustice. *In re Marriage of Jackson*, 2008 MT 25, ¶ 9, 341 Mont. 227, 177 P.3d 474.

## DISCUSSION

¶8 *1. Whether the District Court abused its discretion by awarding primary custody of the children to Terra.*

¶9 District courts determine parenting plans based on the best interest of the children after considering "all relevant parenting factors." Section 40-4-212(1), MCA. These factors include "the mental and physical health of all individuals involved," the relationship between the parents and the children, and "continuity and stability of care." Section 40-4-212(1)(c), (e), (h), MCA.

¶10 In awarding primary custody of the children to Terra, the District Court affirmed that both Lewis and Terra "are fit and able parents [who] care deeply about the best interests, well-being, and development of their minor children." The court found that Lewis "is an appropriate parent of the three minor children," but noted that he had "pursued his own interests at times" and "been questionable with his priorities in relation to the parenting of his three minor children." The court found that Terra "has been an

4

exceptional parent under exceptional circumstances." The court concluded that "it is in the best interest of the minor children to continue residing primarily with [Terra] under the Final Parenting Plan."

¶11 Lewis contends that the District Court abused its discretion by declining to award him at least 50-50 custody of the children. He argues that Terra is not fit to be the primary residential parent because she suffers from major depressive disorder and receives social security disability benefits as a result of that disorder. Lewis also calls to our attention a time when one of the children wandered off while in Terra's custody and a time when Terra used profanity in front of the children. Lewis contends that the court disregarded evidence demonstrating that Terra lacks the ability to parent on a full-time basis.

¶12 The orders reflect the District Court's recognition that the Social Security Administration has found Terra disabled by major depressive disorder. Nevertheless, the court specifically found that Terra's "disability does not impact her ability to effectively parent her three children." The testimonies of multiple trial witnesses provide substantial support for that finding. To recount one, a family friend testified that Terra goes "above and beyond with the boys," that Terra's "whole life revolves around the children," and that Terra "does things that are absolutely incredible that I wasn't able to provide my own boys." Moreover, the Social Security Administration's determination that an impairment prevents a person from working in a full-time job does not necessarily mean the person is incapable of parenting her children as the primary custodian. *See Brennan v. Hill*, 516

5

A.2d 149, 149 (Conn. App. Ct. 1986) (holding that a trial court did not abuse its discretion in awarding custody to a parent who received social security disability benefits).

¶13 The District Court's findings capture the unique challenges of child care in this family. In the dissolution order, the court recounted the testimony of Dr. Kenneth Graham, who has treated all three of the children, including the child who suffers from severe seizure disorder. Relying on his testimony, the court found that the "seizure disorder requires extensive medical care" and "around the clock management." The court noted Dr. Graham's opinion that Terra has a keen understanding of the disorder and a "24-hour a day commitment" to managing it.

¶14 In all, the District Court heard substantial evidence at the trial supporting the finding that Terra "has been an exceptional parent under exceptional circumstances." This finding supports the court's determination to award primary custody to Terra. "Child custody cases often present the court with difficult decisions. We must presume that the court carefully considered the evidence and made the correct decision." *In re Parenting of N.S.*, 2011 MT 98, ¶ 18, 360 Mont. 288, 253 P.3d 863. We affirm the District Court's conclusion that it is in the children's best interest to reside primarily with Terra.

¶15 *2. Whether the District Court abused its discretion with regard to Lewis's child support obligation.*

¶16 The District Court adopted and affirmed the ALJ's determination that Lewis must pay $1,644 total per month in child support. Regarding each party's income for the

purposes of calculating child support, the District Court found that Lewis earns "approximately $85,000 per year" and that Terra receives $2,115.90 in social security disability benefits per month (or $25,390.80 per year). The court also awarded to Terra exclusive use of the parties' ranch property until their youngest child graduates from high school, at which time the property is to be sold and the proceeds divided. The ranch property includes the family home, a homestead, a bunkhouse, and a smaller house—the last three of which the Pesantis have rented to third parties in the past. The court found that renting the ranch property does not provide a "continuous stream of rental income."

¶17 Lewis does not specifically challenge the District Court's factual findings, but argues that the court abused its discretion in affirming the ALJ's determination of Lewis's child support obligation. Lewis points out that, to calculate child support, the ALJ used numbers that conflict with the District Court's findings. Specifically, the ALJ attributed to Lewis $6,300 in rental income from the property that the District Court later awarded to Terra, bringing Lewis's total income to $90,886 (as opposed to the "approximately $85,000" that the District Court found). Also, the ALJ attributed to Terra $16,062 in social security benefits yearly (as opposed to the $25,390.90 that the District Court found). Lewis argues that the District Court's refusal to let him testify at trial about his disagreements with the ALJ's order contributed to the court's abuse of discretion.

¶18 Terra responds by arguing that, with or without the $6,300 in rental income, Lewis could afford to pay the $1,644 in child support that the ALJ ordered, and the order

therefore should be affirmed. Terra also argues that the District Court correctly refused to hear Lewis's testimony about the ALJ's order, and that, regardless, Lewis was permitted to testify regarding his trouble meeting the child support obligation.

¶19 When determining reasonable or necessary child support, a district court must consider "all relevant factors," including "the financial resources of the parents." Section 40-4-204(1)-(2), MCA. The district court must apply the uniform child support guidelines adopted by CSED. Section 40-4-204(3)(a), MCA. "The amount determined under the guidelines is presumed to be an adequate and reasonable support award . . . ." Section 40-4-204(3)(a), MCA. If the district court imposes an amount that departs from the guidelines, "it shall state the reasons" for concluding "by clear and convincing evidence" that the guideline amount "is unjust or inappropriate." Section 40-4-204(3)(a)-(b), MCA.

¶20 The District Court adopted the ALJ's determination that Lewis should pay $1,644 in child support per month. The ALJ derived that number by applying the guidelines to the facts that it found—specifically, to Lewis's $90,886 in annual income (including rental income) and Terra's $16,062 in income. Despite adopting the ALJ's determination of the amount of child support Lewis should pay, the District Court found facts different from those found by the ALJ with respect to rental of the ranch property and Terra's income from Social Security. Applying the guidelines to the District Court's facts could yield a significant change in Lewis's obligation as compared to the obligation determined by the ALJ. In that event, adopting the ALJ's amount would depart from the guidelines.

A district court may order child support that departs from the guidelines only after explaining why clear and convincing evidence requires the departure. Section 40-4-204(3)(a)-(b), MCA.

¶21 Lewis also argues that the District Court abused its discretion by denying admission of Lewis's testimony regarding the child support obligation. When Lewis began to testify regarding his proposal for adjusting the arrearage established by the ALJ, Terra objected and the court sustained that objection because it determined that Lewis's proposal is "a separate issue that [CSED] has a right to participate in."

¶22 Section 40-5-202(5)(a), MCA, specifies that when CSED is providing child support services, it must be afforded notice and an opportunity to participate in any proceeding relating to the establishment or modification of a support obligation. The notice must include "the names of the parties and the child, and the identity and location of the tribunal in which the issues will be determined." Section 40-5-202(5)(b), MCA.

¶23 In *In re Marriage of Banka*, 2003 MT 84, 315 Mont. 97, 67 P.3d 885, we interpreted § 40-5-202(5)'s notice requirement under similar circumstances. In that case, a CSED ALJ issued a proposed temporary child support order. Neither the father nor the mother filed an administrative appeal of the proposed temporary order and it was entered as a final order. *Banka*, ¶ 8. The father moved the District Court in the dissolution proceeding for immediate review of the temporary order, and notified CSED of that motion. Before the court ruled, however, the parties stipulated to dismiss the motion based on a recognition that the order was "a temporary order only" and was "not subject

9

to judicial review . . . [or] binding upon the District Court," which would "supersede the temporary order" when it resolved the petition for dissolution. *Banka*, ¶ 9. Nonetheless, upon resolving the petition for dissolution and entering a permanent child support order, the District Court declined to apply its child support order retroactively, in part because it concluded that CSED had not received proper notice of the proceeding under § 40-5-202(5)(a), MCA. *Banka*, ¶¶ 11, 15. We overturned the court because (1) "the very nature of a [CSED] temporary order contemplates its supersession" by an order of a district court, and (2) the father had provided sufficient notice to CSED of the proceeding. *Banka*, ¶¶ 17-20.

¶24 Here, as in *Banka*, CSED "enter[ed] an order requiring a child's parent or parents to pay an amount each month for the temporary support of the child pending entry of a support order by the district court." Section 40-5-225(3)(a), MCA. Unless terminated by CSED, such an order remains in effect until superseded by a district court's final decree in the dissolution matter. Section 40-5-225(12), MCA. When Lewis moved the District Court to review CSED's temporary order, he notified CSED and CSED responded by objecting to the motion. CSED "was reasonably informed of the pending dissolution proceeding, that child support was at issue, and was aware of the names of the parties and children involved, and the location of the tribunal." *Banka*, ¶ 19. The District Court erred by sustaining the objection to Lewis's testimony regarding his requested modification of the child support ordered by CSED.

10

¶25 We note that Lewis was partly responsible for the confusion regarding the ALJ's order. CSED derived its authority to enter a temporary support order in this case from § 40-5-225(3)(a), MCA. Section 40-5-225(12), MCA, directs that "[a] temporary support obligation established under subsection (3) continues until terminated [by CSED] or until the temporary support order is superseded by a [district court's] final order, judgment, or decree." Thus, a party to a dissolution action who desires to modify a temporary support order entered by CSED under § 40-5-225(3) has a clear path. Once a temporary order is proposed, the party may seek administrative review within CSED before the order is entered as final. Admin. R. M. 37.62.949(2), 37.62.951(1). Once a final order is entered, the party may seek further modification by the court in its final decree of dissolution, provided that CSED has notice and the opportunity to participate in the proceeding. Sections 40-5-202(5)(a), -225(12), MCA.

¶26 Here, although Lewis did not follow the path provided by statute, he did provide CSED notice of the proceeding, and the law permitted him to seek modification in the final decree of dissolution. Despite sustaining Terra's objection, however, the District Court heard testimony from Lewis regarding his gross and net income, his difficulty making the support payments, and his suggested amount of monthly child support payments. Lewis claims error in the disparity in income calculations regarding the rental properties and Terra's annual income. We conclude that the appropriate course is to remand for reconsideration of these issues.

11

**CONCLUSION**

¶27 The District Court's final parenting plan is affirmed. We reverse the final decree and remand for redetermination of child support or for entry of additional findings explaining why clear and convincing evidence supports any departure from the guidelines.

/S/ BETH BAKER

We concur:

/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JIM RICE