No. 04-275

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 352

IN RE THE MARRIAGE OF

SHERRI L. HELZER,

Petitioner and Respondent,

and

STEVE HELZER,

Respondent and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead, Cause No. DR 2001-145(C),
The Honorable Stewart E. Stadler, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James D. Moore, Attorney at Law, Kalispell, Montana

For Respondent:

Paula M. Johnson-Gilchrist, Attorney at Law, Whitefish, Montana

Submitted on Briefs:  August 25, 2004

Decided:   December 14, 2004

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Respondent Steve Helzer (Steve) appeals from the Amended Findings of Fact and Judgment entered by the Eleventh Judicial District, Flathead County awarding marital assets to his former spouse, Sherri Helzer (Sherri). We reverse in part and affirm in part.

¶2 We restate the following issues on appeal:

¶3 1. Whether the District Court erred in determining the property valuation at the time of marriage.

¶4 2. Whether the District Court erred in determining Steve's sustainable income for purposes of calculating child support.

¶5 3. Whether the District Court erred by reapportioning a percentage of the marital estate in its amended findings to Sherri after it had mistakenly doubled Steve's share of the marital estate.

¶6 4. Whether the District Court erred in awarding Sherri a disproportionate share of the marital estate.

¶7 At the outset, we note Sherri has raised five additional issues in her brief. However, in order to preserve an issue not raised by the appellant, a respondent must file a notice of cross-appeal. *Billings Firefighters Local 521 v. Billings*, 1999 MT 6, ¶ 31, 293 Mont. 41, ¶ 31, 973 P.2d 222, ¶ 31 (citing *Gabriel v. Woods* (1993), 261 Mont. 170, 178, 862 P.2d 42, 47). Sherri has not filed a notice of cross-appeal. As a result, we will not address the additional issues she has raised on appeal.

## PROCEDURAL AND FACTUAL BACKGROUND

¶8 Steve and Sherri were married on May 22, 1993. Steve and Sherri separated on March 13, 2001, and on March 27, 2001, Sherri field a petition for dissolution. Steve and Sherri have two children as a result of their marriage.

¶9 At the time of their marriage, Steve was the sole proprietor of Northwest Precision, Inc., a machine manufacturing business. Among his other assets, Steve also owned two trucks, a tract of land with a mobile home and two shop buildings as well as interest in real property owned in common with his family. Sherri, on the other hand, came into the marriage with minimal personal items and a 1985 Honda. During the marriage, however, Sherri started Paper Inspirations, a hand-stamp business which personalizes clothing and gift cards.

¶10 At the time of separation, both parties agreed to a parenting plan, division of personal property and retention of their respective businesses. Both parties could not agree, however, on the valuation of Northwest Precision and its assets for the purpose of distributing the marital estate. The parties could also not agree on the income that should be attributed to Steve for determining child support.

¶11 The District Court entered its Findings of Fact, Conclusions of Law and Judgment on September 3, 2003. Steve filed a motion to reconsider, contending the District Court erred by including $258,357 in real property and improvements twice in its valuation of marital assets. On November 5, 2003, the District Court issued its Amended Findings of Fact and Judgment.

## DISCUSSION

¶12 **Whether the District Court erred in determining the property valuation at the time of marriage.**

¶13 Steve argues the District Court abused its discretion in determining the date of marriage valuation of his real property and improvements associated with his business. He claims the court erred when it relied on Sherri's expert property appraiser, Gene Lard, who incorrectly used the market approach in estimating the property's value at $100,000 at the time of marriage. Steve alleges no genuine comparable sales existed at the time to accurately gauge his property's value and contends the cost approach used by his expert, Tom Donovan, was more comprehensive in evaluating the property at $145,000 at the time of the marriage. Finally, he maintains Sherri made no contributions to the purchase price and her assistance with improvements to the property was compensated at that time.

¶14 Sherri counters the District Court correctly considered her expert's property valuation of $100,000 at the time of marriage. She maintains her expert properly used the market method of evaluating Steve's property holdings, reviewing some 400 sales in the time period in an attempt to find comparable sales and reach a fair market value. Further, Sherri argues Steve's expert's testimony was obtained in the form of a perpetuation deposition during which Sherri's counsel was unable to attend and participate in due to illness. Moreover, Sherri contends Steve's expert's testimony was based exclusively on Steve's estimates regarding improvements and labor on the property. Sherri maintains these improvements occurred after the date of marriage.

¶15 The district court has broad discretion in determining the value of property in

dissolution. Its valuation can be premised on expert testimony, lay testimony, documentary evidence, or any combination thereof. The court is free to adopt any reasonable valuation of marital property which is supported by the record as long as it is reasonable in light of the evidence submitted. *In re Marriage of Meeks* (1995), 276 Mont. 237, 242-43, 915 P.2d 831, 834-35.

¶16 Based on our review of the record, we conclude the District Court did not abuse its discretion in determining the property value at the time of marriage. The District Court received testimony at trial concerning the appreciation in the value of the property. Between the two experts presented, the court found the appraisal of Sherri's expert to be more reliable, citing his use of comparable sales as justifying its finding. The court stated, "Mr. Lard used a comparable sales method to determine the May, 1993 value and although true comparable sales were hard to find, his comparison and analysis appeared to be justified." Similarly, the District Court found Donovan's cost approach valuation "appeared to be unrealistic," believing his reliance on Steve's calculations improper. We therefore affirm the District Court's determination the value of Steve's property was $100,000 at the time of marriage.

## ISSUE TWO

¶17 **Whether the District Court erred in determining Steve's sustainable income for purposes of calculating child support**.

¶18 Steve argues the District Court's finding he had sustainable income of $46,000 was unsupported by substantial credible evidence. Steve contends the District Court misconstrued his expert witness's testimony regarding his annual average income. He also

5

asserts the District Court incorrectly relied on Sherri's expert, Nick Bourdeau (Bourdeau), who arbitrarily arrived at a determination Steve earned $52,028 in wages plus an additional $35,161 from scrap metal sales and adjustments for business expenses and deductions. Included in Bourdeau's estimate is $15,000 in income which Steve contends not only is unsupported by evidence in the record but is, in fact, a product of alchemy. Further, Steve maintains the District Court, in using Bourdeau's testimony, incorrectly considered the three year period immediately preceding the dissolution which failed to reflect the inherent unpredictability of Steve's business and client base.

¶19 Sherri also contends the District Court erred in determining Steve's income. However, Sherri counters the District Court's findings fail to reflect Bourdeau's full estimates regarding Steve's earnings. Specifically, Sherri maintains the District Court should have used the average of Steve's income from the prior three years of $52,028 plus an additional $35,161 from unreported scrap income as well as business expenses, depreciations and deductions to estimate Steve's estate share. Sherri argues Bourdeau is a noted expert in the field of marital asset distribution who correctly followed standard calculations in arriving at his conclusions.

¶20 We review a district court's award of child support to determine whether the district court abused its discretion. *In re Marriage of Bee*, 2002 MT 49, ¶ 19, 309 Mont. 34, ¶ 19, 43 P.3d 903, ¶ 19. To conclude a district court abused its discretion in child support calculations, we must determine whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *In re Marriage of Kovarik*, 1998 MT 33, ¶ 21, 287 Mont. 350, ¶ 21,

6

954 P.2d 1147, ¶ 21.

¶21　The criteria for determination of income under the child support guidelines is defined in § 37.62.106, ARM, which provides:

> (1) Income for child support includes actual income, imputed income, or any combination thereof which fairly reflects a parent's resources available for child support.
>
> (2) Actual income includes:
>
> (a) economic benefit from whatever source derived . . . .
>
> . . . .
>
> (6) 'Imputed income' means income not actually earned by a parent, but which will be attributed to the parent based on:
>
> (a) the parent's earning potential if employed full-time;
>
> . . . .
>
> (7) Income should be imputed whenever a parent:
>
> (a) is unemployed;
>
> (b) is underemployed . . . .

¶22　We conclude the District Court abused its discretion in determining Steve's sustainable income. In its order, the District Court allocated income of $46,000 to Steve for child support calculations based upon the following: stipulated annual income of $37,000; his average wage of $50,000 for the years 1999 through 2001; Steve's expert's opinion he should earn $46,000 annually; and unreported scrap income of $5,000. However, the District Court failed to properly support its findings as to Steve's average annual income as well as his scrap income.

¶23 In arriving at its findings concerning Steve's average annual income, the District Court apparently relied on Steve's expert's opinion about the business' ability to pay Steve a $46,000 salary. Steve's expert stated the following:

> [W]hen you're looking at business valuations you have to look at what will this business sustain? He should be able to pay himself a $46,000 salary every year. He hasn't been able to do that. There was only three years in the history of the company when he was over $23,000. So to pick one year out of the middle of all of this other business history is – is not a fair way to look at this because it didn't do it the three years after, and this year it's not gonna – right now, as of May, it doesn't look like it's gonna do it. It's down $7,000 from last year.

Steve's expert further testified in only three of the last ten years were Steve's wages at the $40,000 level, and in one of those years the corporation sustained losses. It is apparent the District Court misconstrued the testimony of Steve's expert. Although the company was able to pay Steve a salary of $40,000 or more occasionally, the business could not sustain Steve's annual salary at $40,000. Further, the three years used to estimate his average income were not representative because the business continued to sustain loses. Therefore, we conclude the District Court failed to support its findings concerning Steve's average annual income.

¶24 The District Court also failed to properly support its findings as to Steve's imputed income. The District Court heard testimony at trial from Sherri's expert, Bourdeau, that Steve averaged $5,000 a year in unreported income as a result of scrap metal sales. However, as part of his calculations as to Steve's unreported income, including the scrap metal, Bourdeau admitted his computations were based on uninformed estimates:

> Q: Okay. Now, let's take the scrap thing first. First – well, no, before we take the scrap thing at all, how did you get to the figure $15,000?
>
> A: It's an estimate.

8

. . . .

Q: An estimate based on what?

A: Based upon the kind of expenses that Sherri Helzer said were going through there and Steve Helzer said were going through there and based upon scrap income.

Q: So is it your testimony that they told you that $15,000 a year in personal expenditures were going through there?

A: That was the problem. Nobody would tell me anything.

Q: Okay. And the truth is that you made that estimate kind of out of thin air because nobody did tell you anything, you didn't have any idea, did you?

A: No. What I did was I went through the expenses that Sherri Helzer thought were going through there and I said, "Okay, I'll confirm these." I was never able to confirm them.

Later in Bourdeau's cross-examination, the following testimony was adduced:

Q: Okay . . . [y]ou never did anything where you mathematically determined that $15,000, did you?

A: I couldn't

Q: Okay. So that figure is kind of out of thin air or, as the Supreme Court might say, a product of alchemy; correct?

A: Alchemy.

The above quote refers to our Opinion in *In re Marriage of Banka*, 2003 MT 84, 315 Mont. 97, 67 P.3d 885. In that case, we stated Bourdeau had incorrectly imputed income to the husband based on assets used to produce income as well as a fictitious assumption the husband was under-employed. There, as here, we believe Bourdeau's reasoning is "alchemy at its best." *Banka*, ¶ 41. Indeed, the District Court's order gives no indication as to how Bourdeau arrived at the figure of $15,000 of which the court used $5,000 as coming from

9

scrap income. In fact, the District Court also heard testimony from Steve's expert the income from scrap metal was $4,847 in 2001, $376 in 1999 and $1,548 in 1998. Furthermore, Sherri issued subpoenas to every scrap dealer in the Northwest who in turn reported Steve never produced $5,000 in scrap metal for one year. Finally, evidence at trial did not suggest Steve was under-employed.

¶25 Thus, the District Court's finding Steve averaged $5,000 in scrap sales – let alone $15,000 in unreported income – was arbitrary and unsupported by the evidence. Therefore, we reverse the District Court regarding Steve's sustainable income and remand for further findings consistent with this decision. Upon remand the District Court shall determine a correct child support award based on its amended findings regarding Steve's sustainable income.

## ISSUE THREE

**¶26 Whether the District Court erred by reapportioning a percentage of the marital estate in its amended findings to Sherri after it had mistakenly doubled Steve's share of the marital estate.**

¶27 Steve argues the District Court abused its discretion in reapportioning a percentage of the marital estate in its amended findings after inadvertently counting the value of the real property twice against the portion of the marital estate awarded to Steve. Steve asserts the District Court rewrote its findings to award Sherri a similar percentage of the marital estate after it acknowledged it had double charged $258,357 against Steve's share of the marital estate. Specifically, Steve contends the court initially awarded Sherri a cash equalization payment of $75,000 and 57% of the marital estate. The court then amended its findings,

10

changing the cash equalization payment to $55,000 and awarding Sherri 59% of the marital estate. Further, Steve maintains the District Court erred in its amended findings by rejecting the testimony of Steve's expert, Mark Schickendantz (Schickendantz), who provided valuations of Steve's property for distribution purposes in favor of Bourdeau's fictitious estimates.

¶28 Sherri counters the District Court did not abuse its discretion in amending its findings and redistributing the marital assets to accurately reflect the testimony at trial. Sherri asserts the District Court correctly adjusted the cash equalization payment and percentage of the marital estate to mirror the experts' testimony at trial. Sherri contends the difference between the equalization payment of $20,000 and 2% change in her share of the marital estate was not an abuse of discretion.

¶29 We review a district court's division of marital property for abuse of discretion. *In re Marriage of Engen*, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26.

¶30 We conclude the District Court did not abuse its discretion by reapportioning a percentage of the marital estate in its amended findings to Sherri after it had mistakenly doubled Steve's share of the marital estate. In its Amended Findings of Fact and Judgment, the District Court recognized that it erroneously counted $258,357 in real property twice against the portion of the marital estate awarded to Steve, necessitating a revision of its previous findings.

¶31 In reconsidering its findings concerning the marital estate, the District Court studied the testimony of Schickendantz, a certified equipment appraiser, regarding values on the business's equipment before, during and after the marriage. In its Amended Findings, the

11

District Court stated, "[t]he Court finds this hard asset appraisal to be biased in favor of the Respondent and that it is necessary to make adjustments in order to accomplish an equitable distribution of the marital estate." Presumably relying on Sherri's expert's testimony at trial as well as Steve's expert's estimates at trial, the court then proceeded to itemize the premarital value of the assets as well as their amortization over the nine-year marriage, considering revised estimates of the assets' worth over the course of the marriage. The District Court then revised its original estimate that all of the equipment owned by Northwest Precision should be valued at 50% of their original value to a higher estimate of 58%. The court then awarded Sherri an increased portion of the total asset value for the end of marriage valuation of Northwest Precision.

¶32 Having found an increased value in Northwest Precision, the District Court determined a cash equalization payment of $55,000 from Steve to Sherri was necessary to achieve an equitable distribution of the marital estate.

¶33 We have recognized that district courts face a considerable task in determining an equitable distribution of the marital estate. In the final analysis, it is not a question of whether we would be persuaded to reach a different conclusion after considering the same evidence. Rather, the test is whether the district court had adequate evidence to support its conclusions. *In re Marriage of Haines*, 2002 MT 182, ¶ 23, 311 Mont. 70, ¶ 23, 53 P.3d 378, ¶ 23. In this case, we conclude the District Court's findings are supported by substantial evidence and are not clearly erroneous. Accordingly, we affirm the District Court's marital estate share awarded to Sherri.

**ISSUE FOUR**

¶34 **Whether the District Court erred in awarding Sherri a disproportionate share of the marital estate.**

¶35 Steve argues the District Court abused its discretion in awarding Sherri a disproportionate share of the marital estate. Steve maintains Sherri did not seek maintenance or a disparate division of the marital estate. More specifically, Steve contends Sherri entered the marriage with no job, virtually no assets, and made no contribution to Steve's assets during the course of the marriage. Further, Sherri's business, which produces a sustainable income of $25,000 a year, was capitalized solely through his business assets. Finally, Sherri failed to contribute or maintain assets which were owned or purchased by Steve before and throughout the marriage.

¶36 Sherri counters the District Court did not abuse its broad discretion in fashioning an equitable distribution of property. Sherri maintains the court found it was necessary to award her a disproportionate distribution of the marital assets based on the disparate incomes of the parties, the ability to acquire future assets, and the premarital equity in assets awarded to Steve.

¶37 We review a district court's division of marital property to determine whether the findings of fact upon which the division is based are clearly erroneous. *In re Marriage of Lee* (1997), 282 Mont. 410, 417, 938 P.2d 650, 654. "A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of evidence, or if our review of the record convinces us that the district court made a mistake." *In re Marriage of Steinbeisser*, 2002 MT 309, ¶ 17, 313 Mont. 74, ¶ 17, 60 P.3d 441, ¶ 17. Absent clearly erroneous findings, this Court will affirm a district court's division of

property unless we identify an abuse of discretion. *In re Marriage of Gerhart*, 2003 MT 292, ¶ 16, 318 Mont. 94, ¶ 16, 78 P.3d 1219, ¶ 16.

¶38 The criteria for determination of the division of property is defined in § 40-4-202(1), MCA, which provides:

> (1) In a proceeding for a dissolution of a marriage . . . the court . . . shall . . . finally and equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both . . . [T]he court shall consider those contributions of the other spouse to the marriage, including:

> (a) the nonmonetary contribution of a homemaker;

> (b) the extent to which such contributions have facilitated the maintenance of this property; and

> (c) whether or not the property division serves as an alternative to maintenance arrangements.

¶39 The District Court made extensive findings regarding the parties' financial relationships. The court noted Sherri's purchase and contribution to assets such as a tract of land which was titled to and used by Northwest Precision. Further, the court heard evidence at trial suggesting Sherri contributed to the creation and maintenance of this separate parcel through the use of family transfers. The District Court also presumably determined Sherri worked for Northwest Precision for over ten years, as well as contributed her income from her separate business, Paper Inspirations, and her services to the maintenance of Northwest Precision and its assets. Finally, the District Court also considered evidence at trial Sherri contributed her services as a housewife and mother in maintaining the property.

¶40 We conclude the District Court's findings are not clearly erroneous and the court did

14

not abuse its discretion in determining Sherri's marital share. Section 40-4-202(1), MCA, directs the district court to consider the nonmonetary contribution of a homemaker, the extent such contributions facilitated the maintenance of the property and whether the division serves as an alternative to maintenance arrangements. Here, maintenance is not an issue. Further, the District Court's findings support our conclusion the court did not award a disproportionate distribution of the marital estate to Sherri in lieu of maintenance. Indeed, the District Court believed it was necessary to equitably divide the marital estate based on the disparate income of the parties, the ability to acquire future assets, and the premarital equity in assets awarded to Steve. Thus, the findings are supported by substantial evidence and are not clearly erroneous. Accordingly, we affirm the District Court's marital estate share to Sherri.

¶41     For the foregoing reasons, we reverse as to Steve's' sustainable income and remand for a recalculation of child support after Steve's income is redetermined consistent with this Opinion. We affirm the District Court as to its property valuation and distribution of the marital estate.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

15