No. 04-852

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 149

_____

IN RE THE MARRIAGE OF:
PAMELA A. MILLS,

      Petitioner and Appellant,

  and

MICHAEL J. MILLS,

      Respondent and Respondent.

_____

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. ADR 95-144(B)
The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Gary M. Zadick and Mary K. Jaraczeski, Ugrin, Alexander, Zadick &
            Higgins, P.C., Great Falls, Montana

      For Respondent:

            Jeffrey S. Ferguson, Hoines & Ferguson, PLLP, Great Falls, Montana

_____

Submitted on Briefs:  October 11, 2005

Decided:  July 5, 2006

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Pamela A. Mills (Pamela) appeals from an Order of the Eighth Judicial District Court, Cascade County, modifying child support. We affirm in part and remand in part for further proceedings.

¶2 The issues Pamela raises on appeal are whether the District Court erred in finding a sufficient change of circumstances to modify child support, and whether the District Court erred in imputing income of $21,835 per year to Pamela for the purposes of determining the amount of child support.

¶3 The marriage of Pamela and Michael J. Mills (Michael) was dissolved by decree entered July 6, 1995. They are the parents of two children: Kyndal, born May 9, 1990, and Logan, born August 19, 1991. The parties entered into a dissolution agreement, adopted by the District Court, wherein Michael agreed to pay Pamela child support of $157.50 per month per child, for a total of $315.00 per month. The agreement also provided that they would share equally the children's medical costs not covered by Medicaid, and both children would primarily reside with Pamela. The record reflects that a car accident rendered Pamela paraplegic, at least to some degree, before the dissolution.

¶4 On September 11, 2003, Michael filed a motion to modify child support. Pamela responded by filing a motion to increase child support. They reached an agreement and filed a stipulation to modify child support. The District Court issued an order adopting the stipulation on March 11, 2004.

¶5 Pursuant to the 2004 order, Michael was to pay Pamela child support of $250 per month per child, for a total of $500. Also, Michael was to stop providing health

2

insurance for the children, but was to pay 90% of their health care costs. Additionally, Pamela was to apply for health insurance coverage for Kyndal and Logan from the government sponsored CHIPS program, which provides health insurance for low income families. Pamela applied for coverage; however, CHIPS denied her application.

¶6 On June 30, 2004, Michael again moved to modify the child support arrangements, and also to modify the parenting plan due to changed circumstances. Kyndal had decided that she wanted to live primarily with her father. Along with his motion, Michael submitted a proposed parenting plan whereby Kyndal would generally reside with him, and Michael and Pamela would each pay half of the health care expenses for both children. Later, on October 26, 2004, Michael filed a proposed parenting plan in which he sought an order that neither he nor Pamela would pay child support, because each parent would have one of the children living with them and they had similar annual incomes.

¶7 At the hearing on Michael's motion, there was substantial testimony concerning Pamela's income and potential income. The evidence showed that Pamela had, during 2003, worked full-time at FMC Leasing, earning $19,096.73. Additionally, her 2003 U.S. income tax return showed income of $21,835. Pamela testified that her physical health forced her to leave FMC leasing, because she was physically unable to perform the required work.

¶8 The record reflects that Pamela began working part-time at a jewelry store in October of 2003. She first testified that her monthly gross income was capped at $700 to avoid losing at least a part of her disability payments. But, she admitted on cross-

examination that she could make up to $810 without affecting her disability payments. Pamela took the position that child support should be the same amount ordered in March of 2004, based on her actual income.

¶9 Pamela has a bachelor's degree in counseling psychology. However, licensing in this field requires a master's degree, and she claimed that her financial situation made pursuit of a master's degree unfeasible. Pamela also claimed that her mother's illness and her own health conditions prevented her from looking for employment that would not require her to be on her feet as much as she was during her employment at FMC Leasing. Also, she previously directed productions for a group known as First Night Great Falls, for which she received compensation. She kept less than $700, and donated any remaining compensation back to the group. She said that she did not plan to direct again.

¶10 Pamela was also an unsuccessful candidate for Cascade County Commissioner. A newspaper article was introduced which quoted her as saying that she "could bring energy, enthusiasm, and pride back to the commission." On the witness stand, Pamela expressed uncertainty as to whether she could have physically handled the task of being a county commissioner, but had thought it possible. A Cascade County Commissioner is paid $47,000 a year.

¶11 After hearing the evidence, by order of November 18, 2004, the District Court granted Michael's motion to modify the parenting plan to the effect that Kyndal would live primarily with him. The District Court also found that Kyndal's change of residence constituted a change of circumstances, citing ' 40-4-208(2)(b)(i), MCA. The order required counsel for the parties to submit calculations of the amount of child support

4

owed under the Montana Child Support Guidelines. Without making any findings of fact, the District Court ordered that, in applying the guidelines, Pamela's income was to be entered into the calculations as $21,835, and Michael's income was to be entered as $29,500.

¶12 Counsel applied the child support guidelines as ordered, and submitted the result to the District Court. The District Court adopted the calculation by order dated December 13, 2004, and required a monthly payment of child support from Michael to Pamela of $104. The final order also required Michael to pay 63% of the children's medical expenses, with Pamela paying the remainder. This appeal followed.

¶13 Pamela appeals the reduction in child support paid to her. She claims that the single change in circumstances of Kyndal living with her father is insufficient to justify a change in child support because the District Court order from March of 2004 provided that child support was $250 per month, per child. Thus, she argues, there has been no change in circumstances as a matter of law, and she should still receive $250 per month because one child remains with her. She also argues that the evidence does not support the use of $21,835 as her income in the calculation of child support under the guidelines.

¶14 When a district court determines whether a change in circumstances is sufficient to justify a change in child support, we will not disturb that determination absent an abuse of discretion. *In re Marriage of Clyatt* (1994), 267 Mont. 119, 122, 882 P.2d 503, 505. We give great deference to the district court's judgment, and presume its decision to be correct. *Clyatt*, 267 Mont. at 122, 882 P.2d at 505.

¶15 Section 40-4-208(2)(b)(i), MCA, provides:

(2)(b) Except as provided in 40-4-251 through 40-4-258, whenever the decree proposed for modification contains provisions relating to maintenance or support, modification under subsection (1) may only be made:

(i) upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable.

¶16 It is uncontested that Kyndal no longer resided with Pamela, which reduced her household by one person, and that Michael's household increased by one person. This change in circumstances would tend to render the prior child support order unconscionable as Pamela's expenses would decrease and Michael's would increase. To simply reduce the child support by one half, because one of the two children went to live with the other parent, is not required as a matter of law. The application of the child support guidelines takes into account not only the income and expenses of the parents, but also the size of their households. The guidelines call for applying a primary child support allowance per year which varies depending on the persons in a household. Rule 37.62.121, ARM. In addition, the change in primary residence of a child could well affect the amount of Federal and Montana income tax a parent is obligated to pay, which amount is a deduction from income in the child support calculations. Rule 37.62.110(1)(d), ARM. We conclude that the District Court did not abuse its discretion in determining that Kyndal's change in primary residence from her mother to her father was a substantial change in circumstances.

¶17 Pamela also claims that the District Court erred in ordering that her income be included as $21,835 in the worksheet used to compute child support under the guidelines. As the evidence is clear that she no longer earned that amount at the time of the hearing,

6

she posits that the District Court must have imputed additional income to her in violation of Rule 37.62.106(9)(b), ARM. Pamela argues it was improper to impute income to her because the evidence shows that she is physically disabled and cannot earn a greater income than she did at the time of the hearing.

¶18 This Court reviews a district court's award of child support for abuse of discretion, to determine if the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *In re Marriage of Helzer*, 2004 MT 352, & 20, 324 Mont. 371, & 20, 102 P.3d 1263, & 20. The District Court must enter findings of fact in ruling on motions to amend a parenting plan, as an aid to the trial judge's process of adjudication, for purposes of res judicata and estoppel by judgment, and as an aid to the appellate court on review. Failure to do so is an abuse of discretion. *In re Marriage of Lawrence*, 2005 MT 125, ¶ 15, 327 Mont. 209, ¶ 15, 112 P.3d 1036, ¶ 15 (citing *In re Marriage of Barron* (1978), 177 Mont. 161, 164, 580 P.2d 936, 938). These same reasons for requiring findings of fact apply to rulings on motions for a change in child support. We have stated that a district court is required to make specific findings of fact in writing to explain its calculation of child support. *In re Marriage of Stufft* (1997), 286 Mont. 239, 250, 950 P.2d 1373, 1379.

¶19 Pamela is correct that Rule 37.62.106(9)(b), ARM, provides that income should not be imputed to a parent that is physically or mentally disabled, to the extent that parent cannot earn income. However, the evidence in this case might support a determination that Pamela was voluntarily underemployed, or that she had the ability to earn a greater amount because of her qualifications and physical and mental abilities. If such were the

case, it would be proper to impute income to her under the guidelines. Rule 37.62.106(6), (7), ARM.

¶20 The District Court made no findings of fact concerning its decision to order that Pamela's income be included in the child support guidelines calculations at $21,835. The District Court gave no reason whatever for setting her income at this amount. While we do not require specific findings of fact on every element in Rule 37.62.106(6), (7), and (9), ARM, the District Court must set forth the essential and determining facts underlying its decision. *Lawrence*, ¶ 18. Because the District Court's order of November 18, 2004, is devoid of any findings of fact, we are unable to determine the reasons why the District Court ordered that Pamela's income be entered in the child support calculations at $21,835. Thus, the District Court abused its discretion in setting the amount of child support. *Heltzer*, ¶ 25; *Lawrence*, ¶ 18.

¶21 We affirm the order of the District Court that there was a change in circumstances sufficient to modify child support. We remand to the District Court for findings of fact and conclusions of law sufficient to allow a meaningful review of the calculation of child support under the Montana Child Support Guidelines.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON