CHIEF JUSTICE GRAY,
dissenting.
¶33 I respectfully dissent from the Court’s opinion, which affirms the District Court’s Memorandum and Order which-itself-is largely devoid of rationale. I would reverse the District Court.
¶34 In an ordinary case, we could-and presumably would, or at least I would-remand to the District Court for entry of a more complete rationale for its dismissal of Appellants’ complaint. The District Court’s order sets forth the Attorney General’s statements and parties’ arguments, quotes from a 1978 case regarding an attorney general’s discretion and recites § 13-27-312(4), MCA. Addressing Appellants’ argument that the first sentence of the statement of purpose was prejudicial, the District Court did not apply the statute or the 1978 case, but instead “disagree[d]” with Appellants’ argument *162 because-although the court acknowledged Appellants had not argued the sentence was incorrect-“the sentence correctly states” the law that would be changed if CI-98 passed and, “as the [Attorney [G]eneral argue[d],” the sentence was “contextual” rather than “prejudicial” or “misleading.” After addressing a different argument, the court concluded the statements “express a true and impartial explanation... in easily understood language” and “[t]he [Attorney General’s] statements are not arguments nor are they written in such a manner as to create prejudice[.]” In my view, this “analysis’-consisting of bare statements without thorough reasoning or any application of law-does not provide a sufficient basis for this Court to review the District Court’s decision. If time permitted, I would follow our practice of remanding to the District Court to provide us with something we could review properly. See, e.g., Marriage of Mills, 2006 MT 149, ¶¶ 20-21, 332 Mont. 415, ¶¶ 20-21, 138 P.3d 815, ¶¶ 20-21; In re Marriage of Bartsch, 2004 MT 99, ¶ 20, 321 Mont. 28, ¶ 20, 88 P.3d 1263, ¶ 20; Motta v. Philipsburg School Bd. Trustees, 2004 MT 256, ¶¶ 26-27, 323 Mont. 72, ¶¶ 26-27, 98 P.3d 673, ¶¶ 26-27. Unfortunately, the timelines we face here do not permit the usual procedure and, thus, we are forced to “review” in somewhat of a vacuum.
¶35 I begin by disagreeing with both the District Court’s and this Court’s reliance on Wenzel, to support a conclusion that the Attorney General properly exercised his discretion in this case. There, the attorney general drafted an explanatory statement setting forth the major points of an initiative, including language that a nuclear facility could not be built unless approved by the Board of Natural Resources (board)-as well as by a majority of Montana voters-and a sentence stating “[t]he initiative would forbid limitations on the rights of persons to seek compensation for injuries resulting from operation of the facility.” Wenzel, 178 Mont. at 443, 585 P.2d at 635. An opponent argued, among other things, that the initiative constituted a “ban” or “prohibition” because it precluded the board from issuing a certificate for construction of a nuclear facility unless it found that no limits existed with regard to the right to sue such a facility or the amount of compensation that could be awarded in such a suit. Wenzel, 178 Mont. at 445-46, 585 P.2d at 636. Based on this interpretation of the initiative, the opponent argued the attorney general’s statement should have included a word such as “ban” or “prohibition,” and the attorney general had no discretion in that regard. The Court rejected that contention, holding that so long as an attorney general’s language meets statutory requirements, he or she has discretion to choose the language for meeting those requirements. In so doing, the Court *163 distinguished a prior case in which an explanatory statement was clearly misleading because it did not mention that a proposed tax would apply to individually-owned stores as well as chain stores. Wenzel, 178 Mont. at 447-48, 585 P. 2d at 637-38. I agree with the reasoning and result in Wenzel, but the present case bears little resemblance to it.
¶36 Sections 13-27-312(2)(a) and (4), MCA, require the Attorney General to write a statement of purpose for a ballot measure, not to exceed 100 words, which “express[es] the true and impartial explanation of the proposed ballot issue in plain, easily understood language ... so as [not] to create prejudice for or against the measure.” The District Court and this Court have concluded, and I agree, that the statement at issue contains fewer than 100 words and is in plain and easily understood language. The District Court and this Court also have concluded-at least in essence-that the Attorney General’s statement of purpose expresses the true and impartial explanation of the ballot issue in a manner which does not create prejudice for or against it. I disagree strenuously with these conclusions.
¶37 In this regard, I agree with the Court about the impropriety of altering an attorney general’s statements of purpose and implication when those statements comply with relevant statutes. I also agree with the Court’s recognition that not every provision of an initiative-particularly an initiative as lengthy as CI-98-must be included in a statement of purpose or reflected in statements of implication. My disagreement stems from the Court’s conclusion that the statements meet the statutory requirements of § 13-27-312(4), MCA. For the following reasons, it is my view that those conclusions are incorrect.
¶38 With regard to the “true and impartial” language contained in § 13-27-312(4), MCA, I offer the following interpretation which I believe reflects the Legislature’s intent. Dictionaries contain multiple definitions of the word “true.” For example, The AMERICAN HERITAGE Dictionary of the English Language 1850 (4th ed. 2000), defines “true” as “[consistent with fact ... not false or erroneous.” This is a commonly understood meaning of the term. The second sentence of the Attorney General’s statement of purpose reads “[t]his measure amends the Montana Constitution to provide for recall by petition of state court justices or judges for any reason.” In my view, this sentence is not factually correct because CI-98 provides for recall of a justice or judge if, and only if, petitioners gather a specified number of signatures and a majority of Montana electors vote for the recall at a subsequent election. I believe these provisions are essential to voters’ *164 understanding of the initiative and are not mere “details” subject to discretionary “whittling,” as the Court suggests in ¶¶ 17-18. Thus, I conclude the Attorney General’s statement of purpose is factually incorrect, and I would reverse the District Court on that basis alone. ¶39 In addition, I observe the word “true” does not appear on a standalone basis in § 13-27-312(4), MCA. It appears as part of the phrase “true and impartial explanation.” In my opinion, that phrase requires the Attorney General’s statement to comport with another definition of “true” from the same dictionary-namely, “[rjightful; legitimate.” In other words, I do not believe the Legislature intended to require mere factual correctness in the Attorney General’s language. Such an interpretation would overweigh the word “true” and ignore the context in which the word appears. Nor do I believe the Legislature intended to hold the attorney general to such a low standard that almost any statement of purpose which was not factually incorrect would be legally correct and sufficient, whether or not it said anything substantive at all about the ballot measure. In other words, the attorney general would, effectively, be the “ballot measure czar”-with nearly absolute and unfettered discretion. This cannot be the intent of the Montana Legislature.
¶40 In light of the same dictionary’s definition of “impartial” as “[n]ot partial ... unprejudiced,” and the language in § 13-27-312(4), MCA, requiring that the statement of purpose not create prejudice for or against the ballot measure, it is my view that-in addition to being factually incorrect-the Attorney General’s statement of purpose in the present case is not rightful, legitimate, impartial or lacking in prejudice in explaining the ballot measure at issue here. I will explain.
¶41 There can be no dispute that CI-98 is lengthy and somewhat complicated. Indeed, I suspect all would agree that the task of fairly summarizing such a ballot measure in no more than 100 words is daunting. Nor, of course, must the full 100 words be used.
¶42 Here, the Attorney General’s statement of purpose contains 64 words. Of those 64, 38 words are used to set out the “context” of CI-98 as “Montana statutes currently provide for the recall of public officials, including state court justices or judges, for physical or mental lack of fitness, incompetence, violation of the oath of office, official misconduct, or conviction of a felony offense.” I do not disagree that context is appropriate, nor do I suggest any factual error in the 38 words. However, I strenuously disagree with the notion that using a majority of the words in a statement of purpose to set the context-rather than to explain the proposed ballot issue, as required *165 by § 13-27-312(4), MCA-can produce a rightful, legitimate, impartial and unprejudiced explanation.
¶43 In this respect, I reiterate my firm conviction that, to understand CI-98, voters must be informed by the statement of purpose that the mere signing of a petition will not suffice, and that the petition must first be signed by a specific number of electors and then be subject to an election. Moreover, while I appreciate the Court’s reasoning in ¶ 15 that the entire statement of purpose must be read together, I respectfully suggest that the primary purpose of an “explanation” should be to explain what a measure actually would do.
¶44 Having addressed the first and second sentences of the statement of purpose, I turn to the third sentence, which reads “[i]t is effective upon approval.” This is the only sentence I believe is entirely appropriate as a partial explanation of CI-98.
¶45 I would reverse the District Court and hold that the Attorney General’s statement of the purpose of CI-98 does not meet the requirements of § 13-27-312(4), MCA. Consequently, I would conclude our statements regarding an attorney general’s discretion in Wenzel are not applicable here.
¶46 Moreover, just as I believe the provisions regarding the requisite number of signatures and an election are essential and must be included in the statement of purpose, I also believe the statements of implication are insufficient because they do not set forth these aspects of CI-98. Therefore, I dissent from the Court’s conclusion that the statements of implication meet the requirements of § 13-27-312(4), MCA.
¶47 Where, then, would my analysis leave this case if the Court agreed with it? Section 13-27-316, MCA, recognizes the potential for alteration by a court of an attorney general’s statement of purpose and statements of implication. Under different circumstances, a remand to the District Court with instructions for that court to revise the Attorney General’s statements would be appropriate. Here, however, such a remand-with the possibility of another appeal to this Court-is altogether impractical, given that the Secretary of State must certify the ballot no later than 75 days before an election. See § 13-12-201(1), MCA. This year, that deadline is August 24, 2006.
¶48 Given the pressing time constraint, I believe this Court would have no choice but to rewrite the statements for the ballot measure. Would this be an easy task? Certainly not. Would we all agree-initially-about what should and should not be contained in a factually correct, fair, impartial, easily understood and unprejudiced statement of purpose or in statements of implication? Of course not. *166 But it is the business of this Court to agree, by majority vote, with every word contained in every Court opinion. The difficulty of agreeing on language in a statement of purpose and statements of implication-I posit-is no more challenging than that we face on a daily basis in issuing opinions in the hundreds of cases we decide each year. The Court’s unwillingness to undertake such an effort here simply does not comport with the manner in which we generally carry out our duty to decide difficult issues.
¶49 Thus, I would rewrite the Attorney General’s statement of purpose as follows, realizing that-if the Court were willing to engage in this effort-it almost certainly would not be the language a majority of us ultimately would agree upon.
This measure amends the Montana Constitution and other laws to provide that electors could petition for recall of Montana justices and judges for any stated reason(s), an easier process than current provisions for removal of judicial officers and current processes to recall elected officials for reasons such as lack of physical or mental fitness, official misconduct or conviction of a felony. The petition could not be filed before 60 days after the justice or judge takes office. If petitioners gather a specified number of signatures, an election (statewide, district, special) would be held. The measure is effective upon approval.
This statement of purpose, in my view, accurately and impartially melds the context with the main purpose of CI-98, which is to make judicial recalls-but not recalls of other elected officials-easier. It also explains important substantive components of the ballot measure in objective and easily understood language within the statutory maximum of 100 words. In this regard, I join the District Court and this Court in rejecting Appellants’ quarrel with the use of the words “any reason.” The words “any reason” for electoral dissatisfaction are taken from the very text of CI-98.
¶50 I concede my offered statement of purpose does not include every substantive component of CI-98. No statement containing a maximum of 100 words could do so. As mentioned above, I also concede other members of the Court might include components of the measure different from those I chose to include. I am convinced we could work this out to the satisfaction of a majority of the members of this Court. We always do, because that is our job. I am surprised by the Court’s unwillingness to engage in this important task to safeguard Montanans’ cherished right to the initiative process as guaranteed by Article III, § 4 and Article XTV, § 9 of the Montana Constitution.
*167 ¶51 I also would propose altering the statements of implication as follows:
[ ] FOR amending the Montana Constitution to provide for recall of state court justices and judges for any stated reason upon sufficiently signed petition and election.
[ ] AGAINST amending the Montana Constitution to provide for recall of state court justices and judges for any stated reason upon sufficiently signed petition and election.
In my view, this language accurately reflects the true implications of CI-98. While I again acknowledge that other members of this Court might disagree with my exact wording, I am convinced we could resolve our differences and craft statements of implication comporting with § 13-27-312(4), MCA, if the Court were willing to do so.
¶52 Finally, if the Court were willing to rewrite the statement of purpose and statements of implication for CI-98, one remaining issue would require resolution: Appellants having gathered the required number of signatures under legally insufficient statements of purpose and implication, would CI-98 move to the November generad election ballot, or would it be necessary to invalidate the signatures, thereby halting CI-98 in its tracks? In my opinion, CI-98 would proceed to the general election ballot, for the following reasons.
¶53 As set forth in my dissent to the Court’s recently issued opinion in Stop Over Spending Montana, ¶ 79 (Gray, C.J., dissenting), I believe the overall purpose of the statutes providing for initiatives-including those statutes relating to court review of an attorney general’s statements-is to afford Montana voters the opportunity to vote on an initiative with statements meeting statutory requirements to assist in their understanding. I also stated therein that I did not believe the Legislature intended to vest an attorney general with such power that he or she could write biased or inaccurate statements and then, when a court rejected those statements, play the final “trump card” of invalidating previously gathered signatures. Stop Over Spending Montana, ¶ 80. For those reasons-among others-I would have affirmed the district court’s rewrite of the statement of purpose and rejection of the “invalidate the signatures” argument. Stop Over Spending Montana, ¶ 82.
¶54 While I would reach the same overall result here, the present case differs from Stop Over Spending Montana in certain respects. There, I agreed with the district court that, while the Attorney General’s statements in that case warranted correction-or clarification, as I believed the district court implicitly characterized it-they did not warrant invalidation of obtained signatures. Stop Over Spending *168 Montana, ¶¶ 74, 79. In my view, the Attorney General’s statement of purpose for CI-98 is less defensible than that in Stop Over Spending Montana and, therefore, any court alteration of that statement would be more than a clarification. However, I would not penalize Appellants for gathering the requisite number of signatures to place the initiative on the ballot because they did so in spite of a statement of purpose and statements of implication that I conclude were biased against the initiative. In other words, I do not believe the Attorney General’s statements misled people into signing the petition; rather, it is my view that people signed the petition despite statements that could have discouraged them from doing so. Under these circumstances, I would not invalidate the previously gathered signatures.
¶55 Finally, I note the State’s entirely speculative arguments that the timing of Appellants’ challenge reflects a bad motive, as well as its arguments about what Appellants should have done and when they should have done it. Like it or not, Appellants timely filed their challenge under the controlling statute and, if any "suspicious” delay of these proceedings occurred, I would look-at least in part-to the State’s filing of its answer nearly a month after the Appellants’ complaint.
¶56 Under the circumstances of this case, I would hold that Montana law clearly provides CI-98 a path to the general election ballot, with corrections by this Court to the Attorney General’s statements. To hold otherwise is, in my view, to vest in the attorney general nearly total control of what-and how-initiative measures will proceed to a general election. Neither the Montana Constitution nor Montana statutes contemplate such a result.
¶57 I dissent from the Court’s failures to reverse the District Court, to rewrite the statements of purpose and implication for CI-98, and to permit CI-98 to appear on the November general election ballot in a fair and impartial manner for a vote by the people of Montana.