DA 06-0823

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 95N

IN RE THE MARRIAGE OF
TRUDY M. MOORE,

      Petitioner and Appellant,

  and

JIMMY C. MOORE,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DR 04-398
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Trudy M. Moore, pro se, Stevensville, Montana

      For Appellee:

        Mark McLaverty, McLaverty & Associates, PLLC, Missoula, Montana

Submitted on Briefs:  January 4, 2008

Decided: March 18, 2008

Filed:

_____
              Clerk

Justice John Warner delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2      Trudy Moore appeals from an order by the Fourth Judicial District Court dissolving her marriage to Jimmy Moore and distributing their marital estate.

¶3      Trudy and Jimmy Moore married in 1978 and separated in 1999. In 2004, Trudy filed a Petition for Dissolution of Marriage. The parties were unable to reach a settlement agreement regarding what the marital estate consisted of and how it should be divided. On September 1, 2006, the District Court held a bench trial. On November 14, 2006, the District Court issued findings of fact and conclusions of law and a decree distributing the marital estate. Trudy disputes the District Court's distribution in four respects.

¶4      The parties owned a vacation cabin in Crestline, California. Trudy asserts that she made the down payment necessary to purchase the cabin and paid for improvements using her business account. She also alleges that the necessary mortgage payments came from the parties' joint funds. She claims that when they separated, they agreed to sell the cabin, but Jimmy instead rented it and kept the proceeds. Jimmy asserts that he had made all payments, improvements and maintenance on the property after the separation. In October 2003, the cabin burned down. It was insured for $92,556, and when Jimmy received the insurance proceeds, he deposited the money into his account. The District Court awarded all the

2

insurance proceeds to Jimmy, stating only that it was fair and equitable because of the payments he had made on the cabin. The District Court's findings of fact do not address whether Trudy's assertions were credible, why it is equitable that Trudy receive none of the proceeds of the insurance policy, or how the distribution of the insurance proceeds to Jimmy relates to an equitable distribution of the remainder of the marital estate.

¶5 Second, Trudy testified that Jimmy had removed $38,000 from their joint checking and savings accounts prior to the separation. Jimmy denied taking the money. The District Court made no findings of fact concerning this money. We are unable to determine what the District Court found happened to this money and whether it is necessary to consider this allegation in the distribution of property.

¶6 Third, Trudy testified that prior to their marriage, she used nearly $22,000 of her own funds as a down payment on the couple's first home. She claims that this down payment provided the equity for the parties to buy and sell several other properties and that she is thus entitled to receive payment for money she had contributed, plus interest. The District Court did not make any findings regarding Trudy's initial down payment. Thus, we are unable to review whether distribution of the marital estate considered this allegation by Trudy.

¶7 Finally, Trudy appeals the District Court's order regarding money Jimmy has received, and apparently will continue to receive, on account of his employment as a railroad engineer. The District Court found that through December 2005 he received $120,000, in addition to his regular pay, from what is called a productivity fund. It seems that Jimmy may continue to receive money from the productivity fund after the marriage is dissolved. Trudy

3

claims that she is entitled to half the amount, $60,000, which has already been paid. In addition, she claims half the amount Jimmy will receive from the productivity fund in future years.

¶8     Relating to productivity fund payments, the District Court ordered that, "[Trudy] is entitled to the same amount of past and future payments he has received and will receive as calculated pursuant to the Railroad Retirement Formula set out below." The District Court then set out a standard formula for computing the amount of Tier II retirement benefits a divorced spouse could be entitled to receive under the Railroad Retirement Act. This formula determines the percentage of the railroad retirement system retirement benefit a divorced spouse might be entitled to receive. It fixes the amount by calculating a percentage of the benefit considering the years worked for a railroad during the marriage as a fraction of the total number of years worked for a railroad. In this instance, considering the District Court's order, we are unable to determine if Trudy is entitled to a present cash payment of the amount Jimmy has already received from the productivity fund and, if so, the amount of the payment and when it is due. Further, considering the District Court's order, Trudy is to be paid an unspecified portion of the productivity fund money Jimmy may receive after dissolution of the marriage, and there is no indication why such future payments are equitable. Also, there is no order as to whether future payments to Trudy are to be treated as a property distribution or as maintenance. Nor is there any determination of how the railroad retirement distribution formula is to be applied, as Jimmy is still working for the railroad and it cannot now be determined the total number of years he will have worked before he retires.

4

¶9 We review a district court's findings of fact regarding the division of marital property to determine if they are clearly erroneous. *In re Marriage of Kovarik*, 1998 MT 33, ¶ 20, 287 Mont. 350, ¶ 20, 954 P.2d 1147, ¶ 20.

¶10 The Montana Rules of Civil Procedure require that a district court "shall find the facts specially and state separately its conclusions of law thereon." M. R. Civ. P. 52(a). Rule 52(a) requires findings of fact which are "a recordation of the essential and determining facts upon which the District Court rested its conclusions of law and without which the District Court's judgment would lack support." *In re Marriage of Barron*, 177 Mont. 161, 164, 580 P.2d 936, 938 (1978). If the record does not contain the essential facts underlying the decision, this Court cannot conduct a meaningful review on appeal, and we must remand to allow the District Court to issue additional findings that clarify its rationale. *In re Marriage of Mills*, 2006 MT 149, ¶¶ 20-21, 332 Mont. 415, ¶¶ 20-21, 138 P.3d 815, ¶¶ 20-21.

¶11 We conclude that the findings of fact entered by the District Court are not sufficiently specific to meet the requirements of Rule 52(a). We are unable to ascertain what essential and determining facts the District Court relied upon when making its findings of fact. On remand, the District Court should include the facts underlying its decree equitably distributing the marital estate.

¶12 In addition to further findings of fact, the District Court should enter a decree that enables the parties to determine exactly how, when, in what amounts, and in what manner the marital estate is to be distributed.

¶13 Reversed and remanded for proceedings consistent with this Opinion.

5

/S/ JOHN WARNER

We Concur:

/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART