# FILED

September 10 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 13-0851

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 243N

IN RE THE MARRIAGE OF:

SHIRLEY A. CREASON,

      Petitioner and Appellant,

  v.

TIMOTHY K. HEWS,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause No. DR-09-269
Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Shirley A. Creason (self-represented); Wolf Point, Montana

      For Appellee:

          Timothy K. Hews (self-represented); West Yellowstone, Montana

Submitted on Briefs:  July 30, 2014

Decided:  September 10, 2014

Filed:

_____
                  Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Shirley Creason (Creason) appeals from the order of the Montana Second Judicial District Court, Silver Bow County, amending her parenting plan with Timothy Hews (Hews) to grant Hews primary residential custody of the parties' two minor children. We affirm.

¶3     The parties were married on September 9, 2003. They have two children: A daughter, born in 2002, and a son, born in 2005. Their marriage has been dissolved. They first entered into a stipulated final parenting plan on February 25, 2010. The District Court amended that parenting plan on January 17, 2012, and ordered an interim parenting plan on March 20, 2012, following an emergency motion to amend. The District Court approved a new amended parenting plan on December 4, 2012. That parenting plan granted Creason primary residential custody of the parties' daughter and Hews primary residential custody of the parties' son, with the parties alternating parenting time with both children on the weekends. If either parent wished to move, the parenting plan required that parent to serve the other parent with notice of the parent's new address and moving date, at least thirty days prior to the move contemplated. The

2

parenting plan also required the moving parent to file proof of service upon the other parent with the court.

¶4 At the time of the December 4, 2012 parenting plan, Creason lived and worked in Whitehall, Montana. Hews lived and worked in Anaconda, Montana. In early April 2013, Hews filed notice of his intent to move from Anaconda to West Yellowstone. Creason did not object or otherwise respond, and this was deemed to constitute consent to the proposed move pursuant to the parenting plan provisions. In August 2013, Hews relocated to Island Park, Idaho, approximately thirty miles from West Yellowstone. He filed notice of intent to move on August 26, 2013, approximately ten days after the move had occurred. On August 26, 2013, Creason filed a notice of intent to move to Wolf Point, Montana. She contemplated that this move would occur on September 10, 2013. Neither party submitted a proposed revised parenting schedule, although Creason's notice apparently contemplated that the same primary parenting arrangement and alternate weekend parenting schedule would remain in effect. The same day he filed his notice of intent to move, Hews also filed an emergency motion to remove the parties' daughter from Creason's home. The court denied that motion.

¶5 West Yellowstone is approximately 120 miles from Whitehall and Island Park, Idaho, is about 125 miles from Whitehall. The distance to Wolf Point from Island Park, however, is approximately 575 miles. The court found that allowing a move of this distance would harm the children's contact with each other and each child's contact with the non-custodial parent. The court noted that the parties admitted they had not carefully

observed the alternate weekend parenting plan, which had been set in place to facilitate contact between the children. The court granted Hews' motion to relocate and denied Creason's. The court directed that if Creason chose to relocate to Wolf Point, the parties' daughter would be placed in Hews' primary residential care and the parenting plan amended to provide her with reasonable parenting time.

¶6 Creason moved to Wolf Point around October 2, 2013. On her way there, she dropped off the parties' daughter at a maternal uncle's residence in Belgrade, Montana, with all of the child's belongings, and directed Hews—by text message—to go retrieve her. Hews filed a motion to amend the parenting plan and Creason failed to file a responsive brief within the time allowed. The court determined that no hearing on Hews' motion was required. Based in part on Creason's conduct, the District Court concluded that the best interests of the children would be served if they were placed together, with Hews. On November 22, 2013, the court ordered the plan amended to grant Hews primary residential care and custody, with parenting time for Creason over the Christmas holiday in even years and every year during the summer.

¶7 We review for abuse of discretion a district court's decision on whether to modify a parenting plan. *In re Marriage of Mills*, 2006 MT 149, ¶ 14, 332 Mont. 415, 138 P.3d 815. "We give great deference to the district court's judgment, and presume its decision to be correct." *Mills*, ¶ 14.

¶8 On appeal, Creason contends that she did not receive communications from the court regarding the parenting plan amendment proceeding and consequently did not

respond. She also asserts that she moved to Wolf Point to be closer to family and requests that we revisit the District Court's determination to allow her and her family members more frequent contact with the children. She alleges that Hews moved to Idaho earlier than he admitted to the court, and that he was unable to provide stable care for the children, supporting this latter contention with a photograph of her son eating Thanksgiving dinner in a homeless shelter.

¶9      As an initial note, this Court has repeatedly declined to consider a change in legal theory or a new argument first raised on appeal, because of "the fundamental unfairness of faulting a district court for failing to rule correctly on an issue it was never given the opportunity to consider." *Schlemmer v. N. Cent. Life Ins. Co.*, 2001 MT 256, ¶ 22, 307 Mont. 203, 37 P.3d 63. Here, Creason did not file a responsive brief in the action to amend the parenting plan, even though the court's disposition of her request to relocate should have alerted her that such an action was imminent. The District Court had no opportunity to consider the arguments she now raises. Even were these contentions properly presented for our consideration, however, the District Court's decision reflects that it properly considered the best interests of the children in amending the parenting plan. The District Court weighed the children's interests in maintaining a relationship with one another and with each parent in reaching its custody determination, in light of the facts before it. The court noted that "[n]o evidence was presented that the children have any extended family in Wolf Point and northeast Montana."

¶10 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The issues in this case are ones of judicial discretion and there clearly was not an abuse of discretion. It was Creason's burden to timely present the District Court with the necessary information to reach a fully informed decision and to notify the court of her proper contact information. She failed to do so and the District Court did not abuse its discretion or otherwise err in amending the parenting plan, on the record before it.

¶11 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JIM RICE